# FREE v. FARNWORTH et al.

No. 6951.   Decided January 23, 1948.   (188 P. 2d 731.)

See 49 C. J. S., Judgments, sec. 511.  What constitutes cloud on title removable in equity, see note, 78 A. L. R. 24.  See, also, 31 Am. Jur 206.

*W. J. Mitchell* and *Skeen, Thurman & Worsley,* all of Salt Lake City, for cross-complainants and appellants.

*E. LeRoy Shields, Grant H. Bagley* and *W. Q. Van Cott,* all of Salt Lake City, and *D. E. Livingston,* of Salt Lake City, for defendants, cross-defendants and respondent.

McDONOUGH, Chief Justice.

This is the second appeal in this case. See *Free* v. *Farnworth, et al.,* 105 Utah 583, 144 P. 2d 532.

On this appeal defendants Alice Farnworth and D. A. Skeen challenge the judgment whereby a prior Federal court judgment lien of defendant Regional Agricultural Credit Corporation of Salt Lake City (hereinafter called the "Credit Corporation") is foreclosed and the property in controversy is ordered to be sold at sheriff's sale. By such decree the proceeds are to be applied to satisfy liens and claims in the following priority: (a) Plaintiff Roy Free is to receive $906.70; (b) respondent Credit Corporation is to receive $2573.48 on its judgment; (c) respondents Jenson are decreed to be the equitable owners of the property subject to said liens; (d) appellant D. A. Skeen is adjudged to have a subsequent or junior lien in the amount of $1,605 owing on his mortgage. Appellant Alice Farnworth is adjudged to be the record owner subject to all of said liens and charges.

On the former appeal we held that the decree quieting title in plaintiff Free on his tax title was erroneous in view of the fact that he was acting as trustee for Mrs. Farnworth, the record owner, or for D. A. Skeen, her attorney, or for both of them. We held that Free was entitled only to an equitable lien for the amount paid by him to the county to purchase the tax title. In its original findings of fact and conclusions of law, the trial court determined that the Credit Corporation had a valid judgment lien which was unpaid; that the Jensons had a contract of purchase, and that D. A. Skeen had a recorded mortgage for $1,000; but in view of the trial court's conclusion that Free's purchase

of the tax title cut off all interests of all other parties, the court made no determination as to the priority of liens and contract rights, when it entered a decree quieting title in Free. On appeal by the Jensons and the Credit Corporation we reversed the judgment, and remanded the cause to the district court with directions to vacate the judgment, and to enter findings of fact, conclusions of law and judgment in accordance with our expressed views,

"without prejudice to the rights of the parties other than Free to have the priority of their rights and interests determined by the court."

After filing of the remittitur in the court below, Mrs. Farnworth (who defaulted in the original proceedings) and D. A. Skeen each filed an answer and cross-complaint wherein it was alleged that the Federal court judgment lien of the Credit Corporation dated March 14, 1935, automatically expired on March 14, 1943, while this cause was pending on appeal. Those pleadings were stricken by the court on the theory that the cause was remanded for the sole purpose of determining the priority of the various liens as they existed at the time of the entry of the original judgment dated June 10, 1940, which we reversed, and not to retry the entire lawsuit on some new theory.

The contentions of the present appellants may be summarized as follows: (1) That the trial court erred in striking the new pleadings of appellants, because such pleadings were necessary to a proper adjudication of the claims asserted by the Credit Corporation in their counterclaim and cross-complaint which had never been served on anyone except plaintiff Free. (2) That the levy of execution is the exclusive means for subjecting the property of a judgment debtor to the payment of a judgment, and that foreclosure of a judgment lien is not authorized by statute, and that such proceedings consequently were inefficacious. (3) That irrespective of any pending court proceedings designed to enforce the judgment, the judgment lien of the Credit Corporation automatically ceased to exist on March 14, 1943, by operation of law, so that there was no longer in

existence any judgment lien at the date of entry of the foreclosure decree on March 20, 1946.

We shall first consider the second and third points, inasmuch as the determination of those issues against the appellants would obviate the necessity for discussion of the first contention. The contention that there can be no valid foreclosure of a judgment lien is predicated ▮ on the theory that the lien is a creature of statue and can be pursued only in the manner specifically provided by the legislature. Unquestionably, the levy of execution is ordinarily the only proper method.

But this case involves special circumstances. Here the Credit Corporation was brought into court by a suit to quiet title which was designed to cancel the judgment lien and to destroy the equitable interests of the Jensons as contract purchasers. By sheer necessity, as a defendant, the Credit Corporation had to assert its judgment lien and seek appropriate relief. If it had failed to defend and had levied execution at that time, the interest of Mrs. Farnworth as record owner would have been wiped out by her failure to defend, so that the levy of execution would have been nullified.

The Credit Corporation proceeded on the theory that it was required as judgment creditor to set forth its claims and to apply to the court to determine the priority of lienholders and to have the property sold to satisfy the various liens. Respondent corporation deemed it unsafe to proceed with a levy of execution while the judgment debtor's title was being defeated, and sought to have the court control the sale of the property after determining the priority of liens. Said respondent took the position that the plaintiff was not entitled to judgment quieting title, and that the court had the power to determine the priorities of the mortgage and other liens and to order sale of the property to satisfy them.

If a mortgagee and a judgment creditor each claim priority, and the mortgagee forecloses and joins the judgment debtor and also the judgment creditor as parties

defendant, the judgment creditor is in an unfortunate predicament indeed if he is unable to counterclaim or cross-complain to have the issue of priority of liens in controversy determined by the court and to have the property sold at judicial sale and to have the proceeds of sale applied to satisfy liens in the order of priority. If a judgment lien were adjudged in such a suit to be junior to the mortgage lien, the judgment creditor no doubt could purchase at sheriff's sale or exercise his rights as a redemptioner. On the other hand, if his lien were senior to the morgage and it became necessary to have a trial in order to ascertain such claimed seniority, levy of execution by the judgment creditor would be a useless procedure since a mortgage foreclosure sale would result regardless of the levy.

Appellants point out that this was a suit to quiet title, and not a foreclosure action on the part of the plaintiff. They argue that the Credit Corporation was not precluded from levying execution after entry of the decree quieting title, and that the decree contains no restraining order. However, until such decree was set aside on appeal, the judgment quieting title operated as a final judgment to the effect that Mrs. Farnworth had no right, title or interest in the property, and that the Credit Corporation had no judgment lien against this particular property. If the respondents on this appeal had not appealed from said decree quieting title against them, they would have been precluded from asserting any further claims to this property. Pending reversal, through no fault of respondents here the period of eight years following entry of the Federal court judgment expired before the error could be corrected. Until the decree was reversed, the Credit Corporation and the Jensons were as effectively precluded from levying execution and from asserting any other interest in the property as if they had been specifically enjoined by a restraining order.

Perhaps the Credit Corporation was in a worse predicament; for if an outright injunction proceeding had been instituted to restrain levy of execution, as judgment creditor

it would have been entitled to have an appropriate undertaking filed with the court to assure satisfaction of its judgment if the restraining order were subsequently set aside. In this case, the practical effect of the erroneous decree quieting title, was to deprive the judgment creditor of its security until after the case was decided on appeal.

The third point argued is that the judgment lien automatically expired while this case was pending on appeal from the erroneous judgment, notwithstanding such judgment, until reversed, operated to abrogate the judgment lien. Appellants say that the judgment lien ■ continues only for 8 years, and that no exceptions are stated in Sec. 104-30-15, U. C. A. 1943, R. S. U. 1933, and that levy of execution must be made within 8 years after entry of judgment in view of Secs. 104-37-1 and 6, U. C. A. 1943, R. S. U. 1933. Such statements are categorically true as general propositions of law where a judgment debtor does not interfere with levy of execution.

Appellants rely on *Smith* v. *Schwartz*, 21 Utah 126, 60 P. 305, 81 Am. St. Rep. 670. In that case plaintiff sued to quiet title. Defendant counterclaimed to quiet title. The trial court quieted title in defendant, and the only question which was necessary to decide was whether such degree was justified. The former owner was a judgment debtor by virtue of a judgment recovered by defendant on February 18, 1892. On December 31, 1892, said owner and wife executed a deed of trust to secure a promissory note. Upon default in payment, in 1894 the property was sold to the plaintiff. It was admitted that as of said date, the judgment lien was prior in right. In 1895 execution was levied on said real estate by virtue of said judgment, and shortly thereafter plaintiff instituted proceedings to restrain levy of execution and a restraining order was issued against the defendants Schwartz as judgment creditor and against the sheriff. Consequently, the sheriff made return showing said execution wholly unsatisfied. The restraining order was dissolved in May, 1897; but one month prior thereto the defendant Schwartz obtained a renewal of said judg-

ment. After dissolution of the restraining order, on execution on said renewed judgment of April, 1897, the property was sold to defendant Schwartz in satisfaction of the judgment debt of the former owner, and a sheriff's deed was issued upon expiration of the statutory redemption period.

The defendant Schwartz claimed that the lien of the renewal judgment related back to the date of the original judgment, and that by reason of the action of appellant Smith in procuring a restraining order, the period of time intervening until dissolution of such order could not be computed in tne limitation of the time for enforcement of the judgment lien. True, the court discussed both propositions urged by appellants here; but the decision of that case was not dependent upon such discussion of those propositions. The levy of execution on the renewal judgment was not a levy under the original judgment. The lien of a renewal judgment attaches only from the date of the entry of the renewal judgment, and does not relate back to the date of entry of the judgment thus renewed nor extend the lien of the first judgment. In that case the party injured by the wrongful restraining order was not trying to enforce execution on the original judgment, but had a levy and sale under the renewal judgment; and this court held that the original judgment expired.

In this case the judgment creditor was forced to assert its judgment lien in a suit to quiet title, and we hold that after making no objections to foreclosure of such judgment lien until after an appeal, the judgment debtor and a junior mortgagee are not in any position to assert that foreclosure of such judgment lien was improper under the circumstances. Under the peculiar facts of this case, the Credit Corporation have been prevented from having the property sold under execution within the period of 8 years by the conduct of appellants here, the appellants cannot be heard to say that the judgment lien expired.

There is ample authority to the effect that where a judgment debtor prevents levy of execution or sale under writ of execution, by injunction proceedings, on dismissal of the

injunction proceedings the debtor is estopped to claim expiration of the judgment lien until the lapse of a period of time which would correspond with the time lost to the judgment creditor by an improperly issued or wrongfully maintained restraining order. As stated in 1 Black on Judgments, 2d Ed., Sec. 395,

"Where the execution of a judgment is restrained by injunction until the lien is lost by limitation, the party proceeding by injunction upon its dissolution, cannot take advantage of such loss of lien."

In 2 Freeman on Judgments, 5th Ed., Sec. 1014, p. 2113, the following rule is stated:

"* * * If the judgment debtor procures the injunction, and thereby prevents the enforcement of the judgment, he is, upon equitable principles, not permitted to take advantage of his own wrong, and will not be heard to urge that the lien has been lost by the delay compelled by his writ. * * *"

The underlying theory upon which such rule is predicated is that when the judgment debtor goes into equity to prevent collection of the judgment, he impliedly consents that if the injunction has been improvidently granted or wrongfully maintained, his adversary shall not be placed at a disadvantage by reason of the delay. One of the outstanding cases on the subject is *Hensen* v. *Peter*, 95 Wash. 628, 164 P. 512, L. R. A. 1918F, 682, which summarizes and also quotes from a number of leading cases. See also 21 A. L. R. 1057, et seq. When a judgment debtor wrongfully procures a decree quieting title against the judgment creditor, the latter is in no better situation than if injunction proceedings were instituted to restrain levy of execution, as far as the particular property is concerned.

Under the facts of this case as hereinabove recited, neither of the appellants is in any position to assert that the judgment lien of the Credit Corporation expired. When the cause was remanded to the district court for further proceedings, the court determined the amount and priority of liens and ordered foreclosure and sale of the property

to satisfy those liens. It is now too late for appellants to question the procedure adopted by the respondents to protect their rights. Appellants do not point out how the sale of the property under the foreclosure order of the court could prejudice any of the parties nor prevent each person from receiving what is equitably due. The solution adopted in the decree is also equitable for the further reason that it would avoid a circuity of actions. The decree which appellants seek to reverse puts the parties in the same relative position in which they would have been placed if the appellants had not procured an erroneous judgment in the first instance.

The judgment and decree of the district court appealed from is therefore affirmed. Costs to respondents.

PRATT, WOLFE, and LATIMER, JJ., and RAY VAN COTT, Jr., District Judge, concur.

WADE, J., having disqualified himself, did not participate.